**2011 BNH 003**     Note:   This is an unreported opinion.  Refer to LBR 1050-1 regarding citation.
_____

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| In re: | Bk. No. 06-11398-JMD |
| | Chapter 13 |
| Mary Beth Sousa, | |
|        Debtor | |
| | |
| Mary Beth Sousa, | |
| William Sousa, Jr., and | |
| Lawrence P. Sumski, Chapter 13 Trustee, | |
|        Plaintiffs | |
| v. | Adv. No. 07-1215-JMD |
| Wells Fargo Bank, N.A., | |
| Geoffrey B. Ginn, and | |
| Geoffrey B. Ginn and Associates, P.C., | |
|        Defendants | |
| | |
| Wells Fargo Bank, N.A., | |
|        Cross-Claimant | |
| v. | |
| Geoffrey B. Ginn and | |
| Geoffrey B. Ginn and Associates, P.C., | |
|        Cross-Defendants | |

*Peter S. Wright, Jr.*
*Franklin Pierce Law Center*
*Civil Practice Clinic*
*Attorney for Plaintiffs*

*Joshua D. Shakun*
*Harmon Law Offices PC*
*Attorney for Defendant and Cross-Claimant Wells Fargo Bank, N.A.*

**MEMORANDUM OPINION**

**I. INTRODUCTION**

Mary Beth Sousa filed a voluntary petition under chapter 13 of the Bankruptcy Code on October 25, 2006. On November 15, 2007, Lawrence Sumski, Chapter 13 Trustee for the estate of Mary Beth Sousa, Mary Beth Sousa and her husband, William Sousa, Jr. (collectively the "Plaintiffs") timely filed a complaint against Wells Fargo Bank, NA ("Wells Fargo") regarding a consumer credit transaction (the "Transaction") between the parties. Subsequently, the Plaintiffs filed an amended complaint (the "Complaint") adding Geoffrey B. Ginn and Geoffrey B. Ginn and Associates, P.C. (collectively the "Ginn Firm") as defendants (Wells Fargo and the Ginn Firm shall be collectively referred to as the "Defendants"). The Complaint prays for relief on five claims.

Claim 1 consists of four elements. The Plaintiffs allege in the Complaint (1) that the Defendants violated the provisions of 15 U.S.C. § 1635(a) and Regulation Z, 12 C.F.R. §§ 226.15(b) and 226.23(b) by failing to deliver to the Sousas two copies of the notice of right to rescind; (2) that as a result of the violation, the Sousas had a continuing right to rescind the Transaction for either three years or until the third business day after receiving the notice of the right to rescind and all other material disclosures under the Truth in Lending Act ("TILA"); (3) that under TILA, the Sousas are entitled to statutory damages of $2,000, as well as actual damages, compensatory damages for emotional distress, and costs and attorney's fees; and (4) that the Sousas are entitled to a detailed accounting and refund of all payments and charges that they would not have incurred but for the Transaction. In Claim 2, the Plaintiffs seek relief under 15 U.S.C. § 1635(b) for Wells Fargo's failure to honor the Sousas' rescission notice. In Claim 3,

the Plaintiffs seek a determination under 11 U.S.C. §§ 502(b)(1) and 506(d) that Wells Fargo's lien is void by reason of the Sousas' rescission. In Claim 4, the Plaintiffs object to the proof of claim filed by Wells Fargo ("POC 1"). In Claim 5, the Plaintiffs allege that the Ginn Firm violated New Hampshire RSA 358-A.

In addition, Wells Fargo filed a cross-claim against the Ginn Firm. Due to the Ginn Firm's failure to appear or defend the allegations brought against it, the Court entered a default judgment against the Ginn Firm on both the Plaintiffs' Complaint and Wells Fargo's cross-claim for purposes of liability only.

On October 18, 2010, the Court held a half-day trial on the Complaint where testimony was heard from three witnesses. A total of twenty-one exhibits were admitted into evidence, eleven by the Plaintiffs and ten by Wells Fargo. At the conclusion of the trial, the parties elected to submit closing arguments in writing and the Court took the matter under advisement. The Plaintiffs and Wells Fargo submitted closing arguments and memoranda of law on Claim 1. The parties did not address the remaining claims in their memoranda or at trial.

This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a) and the "Standing Order of Referral of Title 11 Proceedings to the United States Bankruptcy Court for the District of New Hampshire," dated January 18, 1994 (DiClerico, C.J.). This is a core proceeding in accordance with 28 U.S.C. § 157(b).

## II. FACTS

The Sousas are owners of residential real estate located in Nashua, New Hampshire. The real estate is the couple's primary residence. In the fall of 2005, the Sousas sought to refinance

their home with Wells Fargo in order to pay for their son's college education. The loan from Wells Fargo was for $239,000, which would pay off the current mortgage on the property held by Ameriquest and would provide the Sousas with a cash payout for personal, family or household purposes. On September 28, 2005, the Sousas attended the closing that was conducted by attorney Samir Ragab ("Ragab") of the Ginn Firm. The only parties present at the closing were the Sousas and Ragab. According to the Sousas, the process lasted approximately three hours. At the closing, the Sousas were presented with each closing document sequentially. They were given time to review and sign each document, after which they were presented another document for review and signature. The Sousas testified that Ragab would leave the room while they reviewed the documents. Ragab stated that leaving the room was not his standard practice, but he had no specific recollection of the closing with the Sousas. While Ragab's standard practice may very well have been to stay in the room for the entire closing, the closing described in the Sousas' testimony was not a standard closing because few borrowers insist on reading the lending documents with such thoroughness.

      Among the documents signed by the Sousas were the TILA disclosure statement and the notice of the right to rescind. The notice of the right to rescind contained a clause above the signature line that read "I the undersigned acknowledge receiving 2 copies of this notice on the 28th day of September 2005." The Sousas concede they read this statement and signed it under the impression they would receive the copies upon completion of the closing. The Sousas also concede signing the TILA disclosure statement despite noticing several serious errors. For example, the disclosure statement indicated that if the loan were paid off early, there would be no pre-payment penalty. Yet a prepayment rider attached to the loan documents clearly stated

4

that if a full pre-payment were made within two years of execution of the security instrument, a pre-payment charge would be assessed to the principal balance. The Sousas testified they asked Ragab about the inconsistency. While his response is a matter of dispute, what is not disputed is that the TILA disclosure statement was inconsistent with the pre-payment rider. In addition, the TILA disclosure statement denoted an acknowledgment by Joe Haglund, an employee for First New England Mortgage, which was the mortgage originator. The testimony of the witnesses is conclusive that Joe Haglund could not have notarized the TILA disclosure statement because he was not present.

Upon completion of the closing, the Sousas testified they left the Ginn Firm's office without copies of any of the documents in the closing packet. The Sousas were uncomfortable leaving without any paperwork, but were told by Ragab that the office copiers were broken and they would receive everything within a few days. Ragab testified that he had no memory of this particular closing,[1] but stated that the Sousas' account is highly unlikely. He insisted that providing borrowers with copies of the closing packet was a high priority in the office and worst-case-scenario he would have mailed it overnight. Furthermore, Ragab explained that lenders usually sent the closing packets "stacked." Meaning, all of the required disclosures and copies were already integrated into the packet and would require no further copies. For instance, there would be three copies of the notice of right to rescind in the packet, one for the lender and the two required copies for the borrower. However, Ragab noted that, though stacking was the

---

[1] Ragab testified that at the time of closing he had already conducted between 200-250 closings for the Ginn Firm prior to the Sousas' closing.

standard practice, he dealt with several lenders who had varying procedures, and he did not recall what was provided at the Sousas' closing.

Shortly after, on October 3, 2005, the Ginn Firm wire transferred loan proceeds totaling $16,683.53 to the Sousas. On either that day or the day after, Mr. Sousa said he received a phone call from Ragab indicating that due to a short payoff to Ameriquest, the Sousas would need to bring the Ginn Firm a check for $1,018.66. In response to the call, Mrs. Sousa went to the Ginn Firm's office to deliver the check to Ragab. The Sousas submitted as evidence the check that was delivered. The check is dated October 4, 2005, and the memo line appears to state "for Mortgage Payout." Ragab testified that short payments are common, though this amount was unusually high. Upon reviewing the evidence, the Court concludes that the Ginn Firm disbursed funds to Ameriquest and the Sousas on October 3, 2005, when it became evident that the payout to Ameriquest was short, and the Sousas were told they needed to deliver a check the following day to cover the missing funds. The payment by the Sousas significantly changed the figures in the HUD-1 settlement statement submitted by the Plaintiffs as exhibit 6. More specifically, the Sousas' payment increased the Ameriquest payoff, and decreased the payout to the borrowers, lines 104 and 303 respectively. According to Ragab, the Ginn Firm should have revised the HUD-1 immediately. However, there is no evidence in the record that a revised HUD-1 was ever prepared or delivered to the Sousas.

Upon delivery of the check to Ragab, Mrs. Sousa inquired about the missing copies and Ragab responded that they would be received in a few days. Again, the Sousas claim no copies were delivered and again Ragab testified that although he had no specific recollection of a discussion with Mrs. Sousa about when the copies would be delivered, the set of events alleged

by the Sousas was improbable. Mr. Sousa testified he made another attempt to attain the copies by arriving at the Ginn Firm's office several weeks later to find that the office was either closed or vacant. The Sousas only other effort to acquire the closing packet copies was a request to First New England Mortgage, who was unable to offer the copies. The Sousas never requested the documents from Wells Fargo and never discussed the issue with family or friends. They continued to make regular payments on the mortgage.

Eventually, the Sousas defaulted on the mortgage due to a real estate tax revaluation that increased their property taxes by approximately 45%. The tax increase created a shortage in the Sousas' escrow account and they could not afford the increased payments. On October 3, 2006, the Sousas received from Wells Fargo a notice of foreclosure sale to be held on October 31, 2006. The notice prompted the Sousas to seek legal counsel. On October 25, 2006, the Debtor filed for bankruptcy under chapter 13. On July 19, 2007, Mrs. Sousa's bankruptcy attorney sent Wells Fargo a letter exercising her right to rescind the mortgage. The letter notified Wells Fargo that the Sousas did not receive copies of material disclosures and did not receive the required notices of their right to rescission. Since Wells Fargo disputed the Sousas' right to rescind, the Sousas filed the Complaint on November 15, 2007.

### III. DISCUSSION

Claim 1 of the Complaint is based on the Sousas' right to rescind pursuant to the provisions of TILA. The parties have stipulated that Wells Fargo is a creditor within the meaning of 15 U.S.C. § 1602(f) because it regularly extends consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or

may be required. In addition, the parties have agreed that the Transaction is a consumer credit transaction per 15 U.S.C. § 1602(h) because the loan was extended for personal, family or household purposes. Therefore, the Transaction must comply with the requirements of TILA. "The stated purpose of [TILA] is 'to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit . . .'" Underwood v. American Home Mortg. Corp. (In re Underwood), 66 B.R. 656, 659 (Bankr. W.D. Va. 1986) (citations omitted). As TILA was enacted with the purpose of protecting consumers, its provisions "are to be construed liberally in favor of the consumer and strictly enforced." Id. at 660. Therefore, "even technical or minor violations . . . impose liability on the creditors." Kajitani v. Downey Sav. and Loan Ass'n, 647 F. Supp. 2d 1208, 1214 (D. Haw. 2008) (citations omitted). Generally, the lender bears the burden of proving compliance with the requirements of TILA. Williams v. Gelt Fin. Corp. (In re Williams), 232 B.R. 629, 640 (Bankr. E.D. Pa. 1999) (citing Wright v. Tower Loan of Mississippi, Inc., 679 F.2d 436, 444 (5th Cir. 1982)). However, introduction of a written acknowledgment of receipt creates a rebuttable presumption of delivery of any required disclosures. 15 U.S.C. § 1635(c).

> Among TILA's protections is the right of borrowers to rescind certain transactions:
>
> in the case of any consumer credit transaction . . . in which a security interest . . . is or will be retained or acquired in any property which is used as the principal dwelling of the person to whom credit is extended, the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this subchapter, whichever is later, by notifying the creditor, in accordance with regulations of the Board, of his intention to do so. The creditor shall clearly and conspicuously disclose, in accordance with regulations of the Board, to any obligor in a transaction subject

> to this section the rights of the obligor under this section.  The creditor shall also provide, in accordance with regulations of the Board, appropriate forms for the obligor to exercise his right to rescind any transaction subject to this section.

15 U.S.C. § 1635(a) (emphasis added).  TILA requires that the borrower must receive two copies of a notice of right to rescind.  12 C.F.R. § 226.23(b).  In the event the copies are never furnished, the right to rescind does not expire until three years after consummation.  12 C.F.R. § 226.23(a).  If the borrower chooses to exercise his right of rescission, he is not liable for any finance or other charge, and any security interest given by the borrower becomes void upon such a rescission.  15 U.S.C. § 1635(b).  Here, the Sousas argue that their right to rescind existed beyond midnight of the third business day after the closing because they did not receive two copies of the notice of right to cancel.  Yet, both the Plaintiffs and Wells Fargo introduced into evidence the notice of right to cancel, signed by the Sousas, that contained an acknowledgment of receipt of the two copies.  As a result, a rebuttable presumption arises that the Sousas were provided the two copies.  The Sousas offered only their testimony to rebut the presumption.  For the Sousas to prevail, the Court must determine that their testimony is enough to rebut presumption of delivery.

### A. Rebuttable Presumption

"The problem of the effect of a presumption when met by proof rebutting the presumed fact has literally plagued the courts and legal scholars."  2 McCormick on Evidence § 344 (Kenneth S. Brown, ed., 6th ed. 2009).  Furthermore, the statute and regulations in TILA are silent as to what evidence is necessary to overcome the rebuttable presumption.  Jackson v. New Century Mortg. Corp., 320 F. Supp. 2d 608, 611 (E.D. Mich. 2004).  Consequently, since TILA is silent on the matter, the Court will start with the Federal Rules of Evidence.

> Under Rule 301,
>
> A presumption imposes on the party against whom it is directed <u>the burden of going forward with evidence to rebut or meet the presumption, but does not shift to such party the burden of proof</u> in the sense of the risk of nonpersuasion, which remains throughout the trial upon the party on whom it was original cast.

Fed. R. Evid. 301 (emphasis added). Prior to the adoption of the Federal Rules of Evidence, there existed two theories concerning the effect of a presumption when met with rebuttal evidence: the Thayer or "bursting bubble theory" and the "Morgan view." <u>Bratton v. The Yoder Co. (In re The Yoder Co.)</u>, 758 F.2d 1114, 1119 (6th Cir. 1985). According to the bursting bubble theory, a party need only introduce rebutting evidence that is sufficient to support a finding contrary to the presumed fact. <u>See</u> 2 McCormick on Evidence § 344. Once the presumption is rebutted, the court makes its decision as any ordinary issue of fact. <u>Yoder</u>, 758 F.2d at 1119. On the other hand, under the Morgan view, "a presumption shifts the burden of proving the non-existence of the presumed fact to the opposing party." <u>Id.</u> The common understanding of Rule 301 is that it embodies the bursting bubble theory. <u>Id.</u> The Court in <u>Yoder</u> reasoned that Rule 301 provides only that a presumption shifts the burden of going forward with evidence to rebut or meet the presumption and therefore the presumption has no probative effect once rebutted. <u>Id</u>. Simply stated, once a rebuttable presumption arises, the party with the burden of going forward must bring forth evidence that would support a jury finding the nonexistence of that presumed fact and if done successfully, the presumption vanishes. <u>See</u> <u>Jackson</u>, 320 F. Supp. 2d at 611. The First Circuit has adopted this view. <u>Bank One, Texas, N.A., v. Montle</u>, 964 F.2d 48, 51 n.2 (1st Cir. 1992) (citing <u>Yoder</u> and holding that since the defendant met his burden of production, no special evidentiary weight is given to the presumption). Accordingly, the Court will apply the bursting bubble theory.

The only evidence directly rebutting the presumption was the testimony of the Plaintiffs. Courts are split over whether a borrower's testimony of non-receipt is enough to rebut the presumption of delivery in TILA. One line of cases holds that mere testimony that the borrower did not receive the required documents is not enough to rebut the presumption of delivery. CUNA Mut. Ins. Group v. Williams, 185 B.R. 598, 599 (B.A.P. 9th Cir. 1995) ("The law in this circuit is that denial of receipt does not rebut the presumption."); Rhoades v. Credithrift, Inc. (In re Rhoades), 80 B.R. 938, 941 (Bankr. C.D. Ill. 1987) (holding something more than denial of receipt is required); see also McCarthy v. Option One Mortg. Corp., 362 F.3d 1008, 1012 (7th Cir. 2004) (holding that mere assertion of non-receipt is not enough to raise a genuine issue of fact as to compliance with the regulation). Other courts have held that positive sworn testimony of non-receipt is enough evidence to rebut the presumption of delivery. Stutzka v. McCarville, 420 F.3d 757, 762 (8th Cir. 2005) (stating the debtor's affidavit would have at least rebutted the presumption of delivery); Williams v. First Gov't. Mortg. and Investors Corp., 225 F.3d 738, 751 (D.C. Cir. 2000) (rejecting the district court's legal standard that the plaintiff's testimony, on its own, was insufficient to rebut the presumption of delivery); Williams, 232 B.R. at 641 ("[I]t is not clear what else a consumer *could* present to 'prove the negative' of non-receipt other than testimony of the same."); Underwood, 66 B.R. at 662 (finding that the debtor's testimony combined with discrepancies in dates on the TILA forms was enough to rebut the presumption). The latter position is more in line with this Court's view on Rule 301. Rule 301 only shifts the burden of going forward with evidence when a presumption arises. Once the party presents evidence to the contrary, the presumption disappears. Because a borrower's sworn testimony or

11

affidavit is considered evidence, such evidence may rebut the presumption if it is credible and contradicts the presumed fact.

Here, the Sousas' account both disposed of the possibility that copies of the notice of right to cancel were actually provided and was credible. The Sousas' unequivocal position is that they did not receive any copies of the closing packet at any point in time. After every effort to acquire the paperwork from the Ginn Firm, the Sousas left its office empty handed. The Sousas testified no copies were ever delivered to their home. Their testimony is they have absolutely no copies of anything from the closing packet, including the required notice of the right to rescind. If the Sousas' testimony is credible, they were not provided copies of the right to rescind. In Williams, the court held in favor of the debtor because his testimony was candid in that he did not receive all of the requisite disclosures and there was no evidence that he ever disposed of or located any additional documents. 232 B.R. at 641. On the contrary, in Jackson, the plaintiffs alleged that every document they received at the closing was in an envelope that did not contain the notices. 320 F. Supp. 2d at 611. However, evidence was presented that the plaintiffs received other documents. Id. Therefore, the absence of the notices in the envelope was not dispositive of the fact that the plaintiffs did not receive the notices. Id. In the present case, the Sousas testified that no documents were ever provided.

The Sousas' testimony was consistent, persuasive, and was based on their specific recollections. The fact that there were errors in the closing documents that should have necessitated revisions supports their testimony that documents were not provided at the closing. Both Mr. and Mrs. Sousa testified and their accounts of the events were unchanging. They described a closing process where they took the time to read each document they were signing.

The Sousas concede they not only signed the acknowledgment of receipt but also read it. However, they also state that they were told the copies would be provided at the end of the closing. The Sousas' reliance on such statements was justified based upon the conduct of the closing and the sequential review and signing of the documents. Why the Ginn Firm would not actually provide copies of the closing packet is a more perplexing question. There is no reason to doubt Ragab's testimony that providing copies was a high priority because there was no incentive for the Ginn Firm to withhold these documents from the Sousas.

In fact, as this case demonstrates, it is in the Defendants' interest to provide all required disclosures in order to start the time to exercise the right to rescind. Nonetheless, this closing was fraught with careless errors. The TILA disclosure statement was inaccurate regarding the existence of a pre-payment penalty and contained a false acknowledgment by the loan originator. More significantly, the short payout to the mortgagee was abnormally high and was ultimately paid by the Sousas to the Ginn Firm. This payment should have resulted in a revised HUD-1. Yet, the Ginn Firm failed to ever submit a revised HUD-1, an admittedly serious oversight. Taking into account the several missteps that occurred at the closing, it is not inconceivable that the Ginn Firm failed to provide copies of the closing packet, even if it were its standard practice, because they may have been holding the documents with the intent to revise them. Similarly, in Underwood, the court held that the presumption was rebutted by sworn testimony supported by inconsistencies in the closing papers where the TILA disclosure statement had a different signature date than the notice of right to cancel even though the debtor was present on only one occasion. 66 B.R at 662. Thus, the Court finds that the Sousas' testimony is credible and that the presumption of delivery of the notice of the right to rescind is rebutted.

### B. Proving Compliance with TILA Disclosures

Since the presumption was rebutted, Wells Fargo must prove its compliance with TILA disclosures. Wells Fargo called one witness, attorney Ragab. Ragab had no specific recollection of the closing or his dealings with the Sousas. Thus, he could not testify as to what occurred on the day of closing nor during his subsequent communications with the Sousas. Instead, Ragab's testimony was limited to the routine office procedures and practices at the Ginn Firm. The Court does not question Ragab's sincerity in recalling the practices of his former employer. Nonetheless, at the Sousas' closing, enough errors were made to suggest that, at least at this particular closing, office procedures may not have been followed due to a desire to correct errors in the documents. Wells Fargo argues that the closing errors have no relationship to the question of whether the TILA disclosures were produced. It is true that failing to revise a HUD-1, for example, cannot directly lead the Court to conclude that Wells Fargo did not provide two copies of the notice of right to cancel. But those errors make the Sousas' account much less unimaginable, as it was characterized by Wells Fargo. In fact Wells Fargo describes the scenario, i.e., where copies of the closing packet were never provided, where the Sousas never discussed the situation with family and friends, and where the Sousas never requested the copies either in writing or orally from Wells Fargo, as simply "unbelievable." The Court strongly disagrees. Ragab testified that, at the time of closing, he had worked at the Ginn firm for ten months and he had conducted approximately twenty-five closings a month. Considering the high volume of work and the noted errors at the Sousas' closing, the possibility of the Ginn Firm inadvertently failing to provide borrowers copies of their closing packet is hardly unimaginable. Furthermore, the Sousas started making their regular mortgage payments after the closing.

Hence, it appears that after a month of trying to obtain their copies, they started making their mortgage payments and moved on with their lives. Though the Sousas could have been more zealous in pursuing the documents, their account is certainly plausible.

The Plaintiffs came forward with two witnesses, Mr. and Mrs. Sousa, who convincingly testified that they left the closing with no paperwork and were never provided any, even after making several requests. The Court finds that Wells Fargo failed to establish that it, or its agent, provided the Sousas with two copies of their notice of right to rescind the mortgage. As a result, the Sousas still had a right to rescind on July 19, 2007, making the rescission letter sent by Debtor's counsel to Wells Fargo valid.

### C. Damages

The Sousas rescinded their mortgage with Wells Fargo and therefore are not liable for any finance or other charge or any security interest given. 15 U.S.C. § 1635(b). However, the Sousas must still pay Wells Fargo the amount actually lent less any sums they have already paid. Underwood, 66 B.R. at 664. In addition, the Sousas are entitled to statutory damages of $2,000, as well as the costs of the action and reasonable attorney's fees as determined by the Court. 15 U.S.C. § 1640.

### D. Effect of Rescission

Claim 2 of the Complaint alleges that under the provisions of TILA, the Sousas are excused from tendering the net proceeds of the loan because Wells Fargo failed to honor the rescission letter sent by Mrs. Sousa's bankruptcy attorney. TILA provides a statutory framework to effectuate a rescission. See Brown v. Nat'l Permanent Fed. Sav. and Loan Ass'n, 683 F.2d 444, 447 (D.C. Cir. 1982). "Within 20 calendar days after receipt of a notice of rescission, the

creditor shall return any money or property that has been given to anyone in connection with the transaction and shall take any action necessary to reflect the termination of the security interest." 12 C.F.R. § 226.23(d)(2). Once the creditor fulfills its obligations under the statute, the debtor is to return to the creditor any property he received from the creditor. 12 C.F.R. § 226.23(d)(3); See Rudisell v. Fifth Third Bank, 622 F.2d 243, 253 (6th Cir. 1980). "If the creditor does not take possession of the money or property within 20 calendar days after the consumer's tender, the consumer may keep it without further obligation." 12 C.F.R. § 226.23(d)(3). However, in the case where a borrower rescinds and the creditor does not acknowledge the rescission, the statue is silent. Rudisell, 622 F.2d at 253. Some courts have held that a debtor may be relieved of its tender obligations where the creditor does not comply with its statutory duties. Shepeard v. Quality Siding & Window Factory, Inc., 730 F. Supp. 1295, 1306 (D. Del. 1990); Williams v. Bank One, 291 B.R. 636, 655 (Bankr. E.D. Pa. 2003). Such a remedy is viewed as a harsh one, but a court may impose it using its equitable powers in situations where creditors have not acted in good faith. Id. The right to rescind is an equitable doctrine subject to equitable considerations. Brown, 683 F.2d at 447. "[C]ourts are to consider traditional equitable notions in applying the statutory grant of rescission." Id. Even where the statute does not require the debtor to tender first, the court may condition return of property to the debtor upon return of property to the creditor. Rudisell, 622 F.2d at 254. Therefore, a court may tailor a remedy that is substantiated by the facts of the case.

  On July 19, 2007, Mrs. Sousa's bankruptcy attorney sent a letter to Wells Fargo exercising his client's right to rescind. The letter notified Wells Fargo that it had twenty days to cancel its security interest and return all consideration paid by the Debtor. Wells Fargo did not

16

comply with the Debtor's demand because it did not believe the Debtor had a valid right to rescind. A good faith belief that the Debtor did not have a right to rescind justifies Wells Fargo's delay in honoring the rescission request. See Rudisell, 622 F.2d at 253. Furthermore, the Sousas have not tendered the money they received to Wells Fargo. At trial, Mrs. Sousa testified that she was seeking financing to cover the monies lent by Wells Fargo in the Transaction, but so far has been unable to do so. Unlike in Sosa v. Fite, 498 F.2d 114, 119 (5th Cir. 1974), where the court excused the debtor of her duties after she tendered her obligations and the creditor failed to take possession of the property, the Sousas have not offered to return the loan proceeds to Wells Fargo. Finally, the Sousas have not offered any evidence that Wells Fargo has attempted to either cheat or deceive them. Therefore, the Court will enter a final judgment requiring the Sousas to tender to Wells Fargo the actual money lent minus any finance charges[2] and payments made on the loan after and directing Wells Fargo to cancel its security interest upon satisfaction of the Sousas' obligation.

### E. The Remaining Claims

Claim 3 seeks a determination that the lien in favor of Wells Fargo is void by reason of rescission. As noted in the previous section, Wells Fargo is required to cancel its security interest within twenty days of entry of a final judgment. Therefore, Claim 3 is addressed by TILA's statutory remedy and shall be denied as moot.

Claim 4 alleges that POC 1 should be disallowed in full due to the rescission. POC 1 is based on the mortgage and note acquired by Wells Fargo as a result of the Transaction. Since the Transaction has been rescinded, the obligation no longer exists and the claim shall be

---

[2] See 12 C.F.R. § 226.4.

disallowed in full. Wells Fargo may not hold a prepetition contract claim against the Plaintiffs but rather a claim under the rescission provisions of TILA. Accordingly, Wells Fargo may submit a new proof of claim for any obligations owed by the Debtor under the provisions of TILA.

Claim 5 asserts a claim under RSA 358-A, the New Hampshire Consumer Protection Act, against the Ginn Firm. On May 19, 2010, the Court granted the Plaintiffs' motion for default judgment as to liability only and directed the Plaintiffs to file an affidavit of damages. The affidavit of damages was filed by the Plaintiffs on June 2, 2010. On August 26, 2010, the Court was notified that Geoffrey B. Ginn filed for chapter 7 in the Western District of North Carolina. As a result, the Court will assess damages against Geoffrey B. Ginn and Associates, P.C. but not against Geoffrey B. Ginn since further proceedings against Geoffrey B. Ginn are subject to the automatic stay.

Finally, Wells Fargo filed a cross-claim against the Ginn Firm for indemnification (Count I) and contribution (Count II). On May 24, 2010, the Court granted Wells Fargo's motion for default judgment as to liability only and directed Wells Fargo to submit an affidavit of damages within thirty days of the date of any judgment establishing Plaintiffs' damages against it. Upon the filing of the affidavit of damages by Well's Fargo, the Court will assess damages against Geoffrey B. Ginn and Associates, P.C. but not against Geoffrey B. Ginn since liquidation of the Wells Fargo's claim against Geoffrey B. Ginn would violate the automatic stay.

## IV. CONCLUSION

The Court concludes that Wells Fargo violated TILA and the Sousas were therefore entitled to rescind the Transaction in July 2007.  As a result of the violation and the rescission, Wells Fargo's proof of claim is disallowed and the Sousas are entitled to damages.  The Sousas are required to tender to Wells Fargo the actual money lent to them less any finance charges and payments they made to Wells Fargo on the loan.  Accordingly, the Court shall grant Claim 1, deny Claim 2, deny as moot Claim 3, grant Claim 4, and grant Claim 5.  Furthermore, the Court will grant Count I and Count II of Wells Fargo's cross-claim against the Ginn Firm.  This opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.  The Court will issue a separate order and judgment consistent with this opinion.

ENTERED at Manchester, New Hampshire.


Date:   March 14, 2011                         /s/ J. Michael Deasy
                                               J. Michael Deasy
                                               Bankruptcy Judge